# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

GEICO CASUALTY COMPANY,

      Plaintiff,

v.

SHAWNTICE DEYJA MIDGETT,
Serve at:
1020 Union Blvd., Apt. 214
St. Louis, MO 63113

MARVIN WASHINGTON,
Serve at:
4209 Darby St.
St. Louis, MO 63120

DONALD STONE,
Serve at:
1205 Old Jefferson City Rd.
Fulton, MO 65251

STARPORT TRANSPORTATION, INC.,
Serve at:
c/o Mo Secretary of State
Attn: Lisa Werdehausen
PO Box 778
Jefferson City, MO 65102

and

ADVOCATE DRIVERS COOP, LLC
Serve at:
c/o Registered Agent Steve Silvey
200 W. Monroe St., Ste. 2025
Chicago, IL 60606

      Defendants.

Case No.    4:21-cv-358

## COMPLAINT FOR DECLARATORY JUDGMENT

GEICO Casualty Company ("GEICO"), by and through its undersigned counsel, and pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, respectfully seeks a declaratory judgment against Defendants Shawntice Midgett ("Midgett"), Marvin Washington ("Washington"), Donald Stone ("Stone"), Starport Transportation, Inc. ("Starport") and Advocate Drivers Coop, LLC ("Advocate") (collectively "Defendants"), for the purpose of determining a question of actual, immediate controversy between the parties.  For its Complaint for Declaratory Judgment, GEICO states as follows:

## Nature of Action

1.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57 for the purpose of determining the parties' rights and obligations, if any, under an automobile insurance policy issued by GEICO to Marvin Washington and his wife, Sharron Washington, Policy No. 4425-41-99-44 with an original policy period of January 30, 2016 to July 30, 2016—which cancelled for nonpayment of premium on March 21, 2016 (the "GEICO Policy") (attached as **Exhibit A**).

2.      GEICO and Defendants have an actual and immediate controversy in that they dispute whether the GEICO Policy affords coverage related to a present, actual and unresolved bodily injury claim brought by Washington against Midgett, an alleged insured of GEICO, in connection with an auto accident that occurred on May 13, 2016, in St. Louis, Missouri, involving a vehicle operated by Midgett, in which Washington was a passenger.  Specifically, the parties dispute whether the GEICO Policy was effectively cancelled due to nonpayment of premium on March 21, 2016—almost two months before the subject accident.

2

3.     GEICO seeks a declaration that the GEICO Policy was effectively cancelled due to nonpayment of premium on March 21, 2016 in accordance with the GEICO Policy's terms and Missouri law and, therefore, the GEICO Policy affords no coverage to Midgett or any other putative insured with respect to the claims and causes of action that are asserted, or could be asserted, by Defendant Marvin Washington or any other potential claimant, arising out of the auto accident on May 13, 2016.

4.     Specifically, GEICO seeks a declaration that it has no duty under the GEICO Policy to defend or indemnify Midgett with respect to claims and factual allegations set forth in the action captioned *Marvin Washington v. Donald Stone, Starport Transportation, Inc., Advocate Drivers Coop, LLC and Shawntice Deyja Midgett*, Case No. 1822-CC11054, pending in the Circuit Court of the City of St. Louis, Missouri ("the Underlying Litigation"), and Washington's claims against Midgett for that same loss that will be presented for adjudication through arbitration or litigation.

5.     GEICO specifically denies the GEICO Policy affords coverage for the claims brought by Washington against Midgett, the claims brought against Midgett in the Underlying Litigation, or any other claim or cause of action that is asserted, or could be asserted, by any other potential claimant, arising out of the auto accident on May 13, 2016.

6.     Alternatively, assuming the GEICO Policy affords coverage, which GEICO denies, GEICO seeks a declaration that Midgett's failure to provide GEICO notice of the Second Amended Petition filed by Marvin Washington in the Underlying Litigation is a material breach of the GEICO Policy, which relieves GEICO of any duty to defend or indemnify.  By failing to provide GEICO an opportunity to defend against the claims asserted in the Second Amended Petition, Midgett forfeited any coverage that may have otherwise been afforded under the GEICO Policy.

7.      Alternatively, assuming the GEICO Policy affords coverage, which GEICO denies, GEICO seeks a declaration that Midgett's entry into a purported agreement with Washington under RSMo. 537.065, which by its express terms prohibit Midgett from accepting a defense by GEICO absent consent of Washington, without first providing GEICO an opportunity to defend and notice of the Second Amendment Petition is a material breach of the GEICO Policy, which relieves GEICO of any duty to defend or indemnify.  By entering into a purported Agreement pursuant to RSMo. 537.065, which by its express terms prohibit Midgett from accepting a defense by GEICO, without first providing GEICO an opportunity to defend and notice of the Second Amendment Petition, Midgett forfeited any coverage that may have otherwise been afforded under the GEICO Policy.

**Parties, Jurisdiction and Venue**

8.      GEICO is a foreign insurance company organized and existing under the laws of Nebraska, with its principal place of business in Maryland.  GEICO is licensed to conduct insurance business in Missouri.

9.      Upon information and belief, Defendant Shawntice Deyja Midgett is a citizen of Missouri and at all times relevant, resided in St. Louis, Missouri.

10.      Upon information and belief, Defendant Marvin Washington is a citizen of Missouri and at all times relevant, resided in St. Louis, Missouri.

11.      Upon information and belief, Defendant Donald Stone is a citizen of Missouri and at all times relevant, resided in Fulton, Missouri.

12.      Upon information and belief, Defendant Starport Transportation, Inc. is a Missouri corporation with its principal place of business in Missouri.

4

13.     Upon information and belief, Defendant Advocate Drivers Coop, LLC is an Illinois limited liability company and its sole member, Steve C. Silvey, is a citizen of Illinois and at all times relevant, resided in Illinois.  Defendant Advocate Drivers Coop, LLC is licensed to conduct business in Missouri.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount-in-controversy (including GEICO's liability limits and the potential cost of defending and indemnifying Midgett through a trial and any appeal) exceeds $75,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendants.

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the underlying claim occurred in this judicial district.

<u>**The GEICO Policy and its Cancellation**</u>

17.     On or about January 30, 2016, an online application for an automobile insurance policy for Sharron Washington was submitted through GEICO's website.

18.     In the online application, Sharron Washington's mailing address was input as 12430 Whisper Hollow Drive, Maryland Heights, MO 63403 (a true and correct copy of the Application Excerpts is attached as **Exhibit B**).

19.     The application indicated that Ms. Washington had lived at that address for three years.  *See* **Ex. B**.

20.     In the online application, Sharron Washington's email address was input as sharronwashington73@gmail.com.  *See* **Ex. B**.

21.     The application consented to receipt of policy information as well as billing information by email.  *See* **Ex. B**.

22.     Based on that application, on January 30, 2016, GEICO issued an automobile insurance policy to Sharron Washington, Policy No. 4425-41-99-44, with an original policy period of January 30, 2016 to July 30, 2016.

23.     The Insuring Agreement to the GEICO Policy states:

**AGREEMENT**

**We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:**

24.     "SECTION I – LIABILITY COVERAGES" of the GEICO Policy states in part:

**SECTION I - LIABILITY COVERAGES**
**Bodily Injury Liability and Property Damage Liability**
**Your Protection Against Claims From Others**

**DEFINITIONS**
The words italicized in Section I of this policy are defined below.

\* \* \*

**2.**   ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease, or death.

\* \* \*

**13.** ***You*** and ***your*** means the policyholder named in the declarations and his or her spouse if a resident of the same household.

**LOSSES WE WILL PAY FOR YOU**
Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:

**1.**   ***Bodily injury***, sustained by a person, or;

\* \* \*

6

**PERSONS INSURED**

**Who Is Covered**

Section I applies to the following as *insureds* with regard to an *owned auto:*

**1.**  *You* and *your relatives*;

\* \* \*

25.     "SECTION I – CONDITIONS" of the GEICO Policy states in part:

**CONDITIONS**

The following conditions apply to Section I:

**1.**  NOTICE

As soon as possible after an occurrence, written notice must be given to us or our authorized agent stating:

    (a)  The identity of the *insured*;

    (b)  The time, place, and details of the occurrence;

    (c)  The names and addresses of the injured, and of any witnesses; and

    (d)  The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an  *insured*, he must promptly send us each demand, notice, summons, or other process received.

\* \* \*

**3.**  ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

    (a)  In the investigation of the occurrence;

    (b)  In making settlements;

    (c)  In the conduct of suits; and

    (d)  In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage; and

    (e)  At trials and hearings;

    (f)  In securing and giving evidence; and

    (g)  By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

\* \* \*

26.     The GEICO Policy contains the following cancellation clause in "SECTION IV –

GENERAL CONDITIONS" of the Policy:

\* \* \*

**8.**   CANCELLATION BY US

We may cancel this policy by mailing to **you**, at the last known address, written notice stating when the cancellation will be effective.

We will mail this notice:

(a)   10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b)   10 days in advance if the policy has been in effect less than 60 days and it is not a renewal;

(c)   30 days in advance in all other cases.

A Post Office Receipt of Mailing shall be sufficient proof of notice.  The policy will cease to be in effect as of the date and hour stated in the notice.

\* \* \*

27.     On or about January 30, 2016, GEICO sent Sharron Washington an Electronic Funds Transfer Bill Notification confirming that premium payments on the GEICO Policy would be automatically deducted from her checking account (a true and correct copy of the January 30, 2016 Electronic Funds Transfer Bill Notification is attached as **Exhibit C**).

28.     The notification was sent to the Maryland Heights address provided to GEICO in the policy application and that correspondence lists the Maryland Heights address.  *See* **Ex. C**.

29.     On or about January 31, 2016, GEICO sent Sharron Washington a policy packet, including insurance ID cards, the declarations page and the policy (a true and correct copy of the January 31, 2016 Policy Packet is attached as **Exhibit D**).

30.     The policy packet was sent to the Maryland Heights address provided to GEICO in the policy application, and that correspondence lists the Maryland Heights address.  *See* **Ex. D**.

31.     On or about February 1, 2016, GEICO sent Sharron Washington a letter, reaffirming Mrs. Washington's enrollment in automatic payments and identifying the checking account from which the payments would be deducted (a true and correct copy of the February 1, 2016 Letter is attached as **Exhibit E**).

32.     The letter was sent to the Maryland Heights address provided to GEICO in the policy application, and that correspondence lists the Maryland Heights address. *See* **Ex. E**.

33.     On or about February 18, 2016, Sharon Washington contacted GEICO and requested that Marvin Washington be listed as a named insured on the policy and a 2005 Chevrolet Equinox be added to the policy.

34.     Per Sharon Washington's request, on February 18, 2016, GEICO issued an endorsement to the GEICO Policy, adding Marvin Washington as a Named Insured and a 2005 Chevrolet Equinox LT, VIN 2NDL63F356120591—the vehicle operated by Midgett involved in the subject accident—as an additional listed vehicle (a true and correct copy of the Declarations Page is attached as  **Exhibit F**).

35.     On or about February 18, 2016, GEICO sent a new policy packet to Sharron Washington and Marvin Washington, including insurance ID cards and policy materials (a true and correct copy of the February 18, 2016 Policy Packet is attached as **Exhibit G**).

36.     The policy packet was sent to the Maryland Heights address provided to GEICO in the policy application, and that correspondence lists the Maryland Heights address. *See* **Ex. G**.   .

37.     On or about February 18, 2016, GEICO sent Sharron Washington and Marvin Washington an Electronic Funds Transfer Bill Notification, updating the policy premium in light of Mrs. Washington's requested change to the policy and reaffirming enrollment in automatic payments (a true and correct copy of the February 18, 2016 Electronic Funds Transfer Bill Notification is attached as **Exhibit H**).

38.     The notification was sent to the Maryland Heights address provided to GEICO in the policy application, and that correspondence lists the Maryland Heights address. *See* **Ex. H**.

9

39.     On or about March 2, 2016, GEICO sent a new policy packet to Sharron Washington and Marvin Washington, attaching a new endorsement effective March 2, 2016, which identified an additional lienholder for one of the listed vehicles (a true and correct copy of the March 2, 2016 Letter is attached as **Exhibit I**).

40.     The letter was sent to the Maryland Heights address provided to GEICO in the policy application, and that correspondence lists the Maryland Heights.  *See* **Ex. I**.

41.     On or about March 9, 2016, GEICO emailed Sharron Washington stating in part, "On 03/06/2016, we attempted to withdraw $319.11 from your bank account," but that "the payment was unsuccessful."  The email further states, "IMPORTANT: If we do not receive a replacement payment, your policy will cancel for non-payment" (a true and correct copy of the March 9, 2016 Email is attached as **Exhibit J**).

42.     The email was sent to the email address provided to GEICO in the policy application.

43.     On March 10, 2016, GEICO mailed Sharron Washington and Marvin Washington a "NOTICE OF CANCELLATION FOR NONPAYMENT OF PREMIUM" regarding the GEICO Policy, which states in part:

> **THIS POLICY IS CANCELLED EFFECTIVE AT THE DATE AND TIME INDICATED IN THIS NOTICE.   THIS IS THE FINAL NOTICE OF CANCELLATION WE WILL SEND PRIOR TO THE EFFECTIVE DATE AND TIME OF CANCELLATION INDICATED IN THIS NOTICE.**
>
> **Effective Date:** 12:01 a.m. local time Mar-21-16
>
> * * *
>
> ***Important Notice Regarding the Assigned Risk Plan.***

10

> You may obtain automobile insurance through the Missouri Automobile Insurance Plan. We urge you to contact any agent of your choice immediately for further information.

(a true and correct copy of the Notice of Cancellation for Nonpayment of Premium (the "Cancellation Notice") is attached at **Exhibit K**) (emphasis in original).

44. The Cancellation Notice identifies the reason for the cancellation as the Washingtons' "nonpayment of premium" on the GEICO Policy. *See* **Ex. K**.

45. The Cancellation Notice notes the effective date of cancellation of the GEICO Policy as "12:01 a.m. local time Mar-21-16." *See* **Ex. K**.

46. The Cancellation Notice further notes that the Washingtons "may obtain automobile insurance through the Missouri Automobile Insurance Plan" if the GEICO Policy cancelled. *See* **Ex. K**.

47. On March 10, 2016, the Cancellation Notice was mailed to the Maryland Heights mailing address provided to GEICO in the policy application, and the Cancellation Notice lists the Maryland Heights address. *See* **Ex. K**.

48. The Cancellation Notice was mailed using the United States Post Office's certificate of mailing service (a true and correct copy of the signed Post Office Receipt of Mailing is attached as **Exhibit L**).

49. On or about March 25, 2016, GEICO mailed a Balance Due on Canceled Policy letter to Sharron Washington and Marvin Washington (a true and correct copy of the March 25, 2016 letter is attached as **Exhibit M**).

50. The letter was mailed to the Maryland Heights address provided to GEICO in the application, and that correspondence lists the Maryland Heights address. *See* **Ex. M**.

11

51.     On or about April 15, 2016, GEICO mailed an additional balance due letter to Sharron Washington and Marvin Washington (a true and correct copy of the April 15, 2016 Letter is attached as **Exhibit N**).

52.     The letter was mailed to the Maryland Heights address provided to GEICO in the application, and that correspondence lists the Maryland Heights address.  *See* **Ex. N**.

53.     On or about May 6, 2016, GEICO mailed an additional balance due letter to Sharron Washington and Marvin Washington (a true and correct copy of the May 6, 2016 Letter is attached as **Exhibit O**).

54.     The letter was mailed to the Maryland Heights address provided to GEICO in the application, and that correspondence lists the Maryland Heights address on the letter.  *See* **Ex. O**.

55.     On or about May 27, 2016, GEICO mailed a final notice balance due letter to Sharron Washington and Marvin Washington (a true and correct copy of the May 27, 2016 Letter is attached as **Exhibit P**).

56.     The letter was mailed to the Maryland Heights address provided to GEICO in the application, and that correspondence lists the Maryland Heights address.  *See* **Ex. P**.

57.     None of the above mentioned letters, PORS or emails were ever returned to GEICO as undelivered.

58.     The same information that was communicated to Sharron Washington and Marvin Washington by U.S. mail and PORS was also communicated by email and sent to the email address provided to GEICO in the application.  A compilation of such emails is attached as **Exhibit Q**.

### **The Underlying Accident and Lawsuit**

12

59.     Several months after the GEICO Policy cancelled for nonpayment of premium, Washington and Midgett were involved in the subject auto accident.

60.     On August 23, 2018, Marvin Washington filed a Petition for Damages against Donald Stone ("Stone") and Starport Transportation, Inc. ("Starport") in the Underlying Litigation (the "Petition") relating to that accident.

61.     The Petition alleged that on May 13, 2016, Washington sustained nondescript injuries in an auto accident involving vehicles operated by Midgett and Stone.

62.     At the time of the accident, Washington was a passenger in a 2005 Chevrolet Equinox driven by Midgett.

63.     Count I of the Petition alleged a count for negligence against Stone, asserting Stone was negligent in operating a vehicle and caused the accident.

64.     Counts II-IV of the Petition alleged counts against Stone's alleged employer, Starport, for vicarious liability, negligent hiring and retention, and negligent training and supervision.

65.     On August 1, 2019, Washington filed a First Amended Petition for Damages (the "First Amended Petition").

66.     Counts II-IV of the First Amended Petition alleged counts against Stone's alleged employer, Advocate Drivers Coop, LLC ("Advocate"), for vicarious liability, negligent hiring and retention, and negligent training and supervision.

67.     Count IV of the First Amended Petition alleged a count for negligent entrustment, asserting Starport negligently entrusted its tractor trailer to Stone and Advocate.

68.     None of the counts in either the original Petition or the Amended Petition stated a claim against Midgett.

69.     On April 10, 2020, Defendants Stone, Advocate and Starport (collectively "Stone") filed a Third-Party Petition for contribution against Midgett, asserting she was negligent in operating a vehicle and contributed to cause the accident (the "Third-Party Petition") (attached as **Exhibit R**).

70.     On June 25, 2020, Washington filed a Second Amended Petition for Damages (the "Second Amended Petition") (attached as **Exhibit S**).

71.     The Second Amended Petition added a negligence count against Midgett, alleging she negligently operated her vehicle and caused the Accident.

72.     Midgett did not provide GEICO a copy of the Second Amended Petition.

73.     On September 30, 2020, after Midgett failed to respond to the Third-Party Petition, Defendants Stone, Advocate and Starport filed a motion for default judgment, requesting that the Court enter a default judgment against Midgett "for contributing to cause Plaintiff's damages in the amount of $1,000,000[.]"  (the "Motion for Default") (attached as **Exhibit T**).

74.     On February 17, 2021, Midgett, without notice to or consent from GEICO, entered into a purported agreement under RSMo. § 537.065 with Washington, under which Midgett agreed to proceed with Washington's chosen option of a trial or arbitration to resolve Washington's claims against Midgett (the "purported .065 Agreement").  A true and correct copy of the purported .065 Agreement and transmittal email dated February 17, 2021 is attached as **Exhibit U**.

14

75.     Midgett further agreed not to "object to the introduction of any of [Washington's] evidence," "cross examine [Washington's] witnesses," "offer evidence on her own behalf without [Washington's] express consent," or "let any person or entity intervene on her behalf or in representation of her interests and further agrees to object to any such attempt, unless [Washington] agrees to such intervention in writing." *See* **Ex. U**, purported .065 Agreement at pp. 2-3.

76.     Midgett also agreed "to retain legal counsel consented to by [Washington] to represent her. *Id.* at p. 3.

77.     In an email dated February 17, 2021, Washington's attorney provided notice of the purported .065 Agreement to GEICO. *See* **Ex. U** at p. 1.

78.     About a week later, on February 25, 2021, Washington voluntarily dismissed his claims against Midgett *without prejudice*.

79.     Midgett did not provide notice to GEICO of the Second Amended Petition prior to Midgett entering into the purported .065 Agreement.

80.     Midgett did not provide notice to GEICO of the potential entry of the purported .065 Agreement; instead, Washington's attorney only provided notice to GEICO of that agreement after it was already executed. *See* **Ex. U** at p. 1.

81.     GEICO is unaware of any further resolution of Washington's claims against Midgett.

82.     Upon information and belief, Washington and Midgett intend to resolve their dispute through arbitration, and then intend to seek recovery of any such judgment from GEICO.

83.     Midgett has yet to respond to Defendants' third-party claims or their Motion for Default Judgment, which remain pending and unresolved.

## Count I – Declaratory Judgment

84.     GEICO incorporates by reference the preceding paragraphs of its Petition for Declaratory Judgment as if fully set forth herein.

85.     The Cancellation Notice fully complied with the terms of the GEICO Policy.

86.     The Cancellation Notice fully complied with Missouri law, including RSMo. §§ 379.114, 379.118.

87.     After the Cancellation Notice issued, Marvin Washington failed to make any premium payment on the GEICO Policy prior to March 21, 2016.

88.     After the Cancellation Notice issued, Sharron Washington failed to make any premium payment on the GEICO Policy prior to March 21, 2016.

89.     As a result of the Washingtons' nonpayment of premium, the GEICO Policy was effectively cancelled on March 21, 2016—at least ten days after the Cancellation Notice issued.

90.     The GEICO Policy affords no coverage to Midgett or any other putative insured for the May 13, 2016 auto accident because the GEICO Policy was properly and effectively cancelled due to nonpayment of premium.

91.     Alternatively, assuming the GEICO Policy affords coverage for the accident, which GEICO denies, GEICO seeks a declaration that Midgett's failure to provide GEICO notice of the Second Amended Petition is a material breach of the GEICO Policy, which relieves GEICO of any duty to defend or indemnify.  By failing to provide GEICO an opportunity to defend against the claims asserted in the Second Amended Petition, Midgett forfeited any coverage that may have otherwise been afforded under the GEICO Policy.

16

92.     Alternatively, assuming the GEICO Policy affords coverage for the accident, which GEICO denies, GEICO seeks a declaration that Midgett's entry into a purported agreement with Washington under RSMo. 537.065, which by its express terms prohibit Midgett from accepting a defense by GEICO absent Washington's consent, without first providing GEICO an opportunity to defend and notice of the Second Amendment Petition is a material breach of the GEICO Policy, which relieves GEICO of any duty to defend or indemnify.  By entering into a purported Agreement pursuant to RSMo. 537.065, which by its express terms prohibit Midgett from accepting a defense by GEICO, without first providing GEICO an opportunity to defend and notice of the Second Amendment Petition, Midgett forfeited any coverage that may have otherwise been afforded under the GEICO Policy.

93.     An actual, immediate controversy exists among the parties as to whether there is coverage under the GEICO Policy for Washington's claims against Midgett, and the claims and allegations against Midgett asserted in the Underlying Litigation.

94.     All necessary and proper parties are before the Court with respect to the matters in controversy as set forth herein.

95.     GEICO has no adequate remedy at law.

17

WHEREFORE, GEICO prays this Court declare the rights and obligations of the parties under the GEICO Policy, and to enter judgment for GEICO, adjudging and declaring:

    a.  The GEICO Policy was effectively cancelled on March 21, 2016, in full compliance with the terms of the GEICO Policy and Missouri law;

    b.  The GEICO Policy does not provide coverage to Midgett or any other putative insured with respect to the claims and causes of action arising out of the May 13, 2016 auto accident;

    c.  Alternatively, Midgett's failure to provide GEICO notice of the Second Amended Petition is a material breach of the GEICO Policy, which relieves GEICO of any duty to defend or indemnify.  By failing to provide GEICO an opportunity to defend against the claims asserted in the Second Amended Petition, Midgett forfeited any coverage that may have otherwise been afforded under the GEICO Policy.

    d.  Alternatively, Midgett's entry into a purported agreement with Washington under RSMo. 537.065, which by its express terms prohibit Midgett from accepting a defense by GEICO, without first providing GEICO an opportunity to defend and notice of the Second Amendment Petition is a material breach of the GEICO Policy, which relieves GEICO of any duty to defend or indemnify. By entering into a purported Agreement pursuant to RSMo. 537.065, which by its express terms prohibit Midgett from accepting a defense by GEICO, without first providing GEICO an opportunity to defend and notice of the Second

Amendment Petition, Midgett forfeited any coverage that may have otherwise been afforded under the GEICO Policy.

e.   GEICO requests its costs incurred herein.

f.   GEICO requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ Bradley S. Thomas*
Douglas S. Beck, MO #49984
Bradley S. Thomas, MO #68811
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile:  (816) 421-5547
dbeck@shb.com
bsthomas@shb.com
*Attorneys for Plaintiff GEICO Casualty Company*